21-1106 Litzsinger v. Adams County Coroner's Office. And welcome back, Mr. Lichty, you may proceed. Thank you, and may it please the court. I want to make sure that our theory of the case is clear. As the district court said in quotations, here the parties only dispute concerns whether defendant's reasons for termination were pretextual, end quotation. So the prima facie case was never considered below. Plaintiff's anxiety came to a head in the night of August 3, when she called the coroner that evening and said that she could not do a decomposition, that's a decomposed body, because she was burnt out. 10 days earlier, the coroner had drafted a written reprimand concerning a conflict with plaintiff's secondary employment, a request for accommodations because of medications were making her sleepy, medications for her anxiety, and working after her shift that ended. She did not issue this reprimand because being burned out on August 3 made the matter more serious. On August 9, plaintiff went to the emergency room and she had a heart issue. Instead it was anxiety and she was put on FMLA leave until August 21. The next day, the coroner wrote to a Nicoletti psychologist who was working for the county, that, open quote, it is obviously highly suspect that this employee was going to try to abuse, end quote, her FMLA leave. On August 30, the week after returning from her leave, the coroner put her on probation. The terms were not in writing, plaintiff admitted in that August 30 probation meeting that she was on the internet for personal reasons far too much and explained that this was because of her depression, but that she would, if on probation, she would make amendments. The coroner said in the August 30 meeting that if plaintiff had been caught up in her work, her personal internet use would not have been an issue. So obviously she's not breaking any law or any rule by being on the internet for personal reasons. And in her deposition, the county attorney said that the terms of the probation to him did not sound any different than just being an employee, to which plaintiff agreed. When plaintiff went on probation, the coroner tracked her internet use and rushed to the conclusion that nine site visits out of 1,046 site visits were for personal use. The coroner did not even ask plaintiffs about any one of these nine site visits. She was wrong, but she used this as the reason for termination. In fact, she terminated plaintiff for taking five minutes of time to help her son during a power outage, which would not have been a violation had she been a regular employee. Retaliation is simple. On the day after plaintiff went on FMLA leave, the coroner wrote that she believed plaintiff was abusing the leave. She could not terminate her at that time because she needed a better paper trail. She put her on probation, manufactured a paper trail of personal internet visits, and terminated her. That's our theory of the case. I would like to reserve my time unless there are questions you want to ask now. Let me ask you about the precipitating event that led to her termination. That was the second time she was allegedly visiting personal sites or doing personal use of the computer to go on the web. Did she make any effort to explain what she had been doing on the web? I didn't see anything in the record on it until your brief. When you say the second time, are you talking about the time she went on to help her son or the time she went on to show her colleagues a site that she had posted some photography? Well, when I say second time, I should say maybe second series of events. Oh, okay. So the nine- You were warned not to use computer for personal use. Right. And then they said you violated that on multiple occasions. And did she explain or try to explain how she had been using the computer on those occasions? For example, one of the sites she visited was Facebook. On the earlier occasion, she had admitted that she had used Facebook for personal uses. Right. Did she make any effort to say what she had used Facebook for on this later use and explain that it was actually work-related? No. Remember, this was Sunday night, eight o'clock at night. She had finished up all of her incompleted reports. The coroner came in with her deputy and they just fired her. They didn't ask her any questions. They didn't give her any opportunity to explain. They just said, you're gone. Did they say it was because of misuse of the computer? Yes. And she made no effort to explain how she had been using the computer? There's nothing in the record. She tried to say something, but no. They just said, you're gone. You violated your probation. You're gone. Go ahead. Go ahead and finish, Judge Hartz. Well, I was just gonna ask. So at what point did she first explain how she had been properly using the computer for the most part on these later uses, I guess, on Sunday night? No, it wasn't until the litigation, I don't think, because she was gone. She was marched out. That was it. Well, was it made in district court or just in your briefs on appeal? No, no, in district court, yes. Okay. It was very extensively made in district court. Well, there were some other work-related performance issues that were disclosed about being late with product and reports, and somehow that was apparently linked to excessive internet usage. Or was the coroner entitled to rely on that history of performance? And what happened on this Sunday night was really a last straw? The irony, Judge Timprovich, is that she had just gotten caught up with everything. She was not behind at all, and she was terminated. So she admits that because of her anxiety, now remember, she was off work under medications for 11 days. She recovered somewhat from her anxiety. She still had a ways to go. Then she hurt herself tripping down the stairs, so she missed two days of work. She came in on Saturday and Sunday and got all of her old cases caught up. The coroner came in at eight o'clock that night and fired her So she was all caught up. There was no other problem. And besides, in the meeting on August 30th, the coroner said, you know, you're one of my best investigators. And she was. She was one of the higher producers over the years. Well, do you concede that she violated the request by the coroner not to use the internet for personal use? And if you do concede that, are we coming back like we were in another case that really the materiality or the severity of the infraction wasn't commensurate with the punishment here? Is that? Well, that's part of it. But also she understood that, you know, not to go on the internet for personal use. She understood that that meant, you know, as she had been doing, she admitted that she had been abusing it before she went on probation. She had been on for an hour at a time. So she said, okay, I won't go on the internet for anything. She's helping out her son, which all the employees were allowed to do. So that was not impermissible internet use. And then the other time she went on to show the other employees her website for photography, that wasn't even cited as one of the reasons why she was terminated. So apparently either the coroner overlooked it or the coroner said, no, that's fine. So she did violate the terms of probation. It's just that- Well, here's the problem. The terms were not in writing. So the terms were a little squishy. You know, don't go on the internet for personal use and then as the county attorney said, what sounds to me like you're supposed to be like a regular employee. You only go on occasionally for whatever. You know, if you have to make a reservation for a dinner or something like that, yeah, okay, that's fine. That's five minutes. And helping your son out, that's fine. That's five minutes, but you can't abuse it. And that's what she understood. That's why she was not reluctant to go on to help her son because she said, well, this doesn't violate anything that I'm aware of. Is there anything to suggest that her boss didn't think she was abusing the internet when she was terminated? Circumstantial evidence. You can see in her email that was very revealing just shortly before. And this is a case in which the prima facie evidence does affect the pretext evidence, you know, Judge Hart's, as opposed to the other case, at least. So if you- So why do you think, what evidence is there that her bosses didn't really believe that she had been abusing the internet when they fired her? Because she gets on probation, immediately they're looking at her internet use. They're just trying to- No, but it's indicative of someone who wants to catch her. I want you to put yourself away. I'm gonna give you some rope to hang yourself on. And I'm gonna, if she was really concerned about it, the coroner would have asked her about these nine site visits. Would have said, okay, what's this? What's that? What's that? She didn't bother to ask. She just jumped to the conclusion that, no, this is enough for me and you're gone. She needed a paper trail. She made it and she used it. Now, it's circumstantial evidence. Counsel, could you clarify? I'm a little confused now about her probation status. You mentioned a minute or two ago that the prohibition on personal internet use was not written down. Right. But what signified that she was formally on probation? Was that written down? No. You're not contesting though that she was on probation. She agrees she was put on probation during that meeting. It was an hour long meeting and pieces of it were recorded and were submitted as part of the record below. Didn't she agree at the meeting that it was appropriate to put her on probation? Yeah, yes. She admits that she had been abusing it before, but then she cleaned up her act and she was doing very well after she was put on probation. I mean, helping her son out. She said, well, I wouldn't imagine that would be a violation of probation because this is what everybody does. Yeah, but not everybody was on probation. Yes, but according to the county attorney, he says, it sounds like you just had to be like a normal employee. And she said, yes, that that was the terms of the probation. I mean, they put the words in her mouth, not she. They define the terms of the probation, not she. Well, if there's no other questions, I'd like to reserve a little bit for rebuttal. All right, let's hear from the corner, Mr. Sink. Okay. May it please the court. Good morning. My name is Michael Sink. I represent the Adams County Coroner's Office, the appellee in this matter. Very few facts in this case are in dispute. Of the roughly 50 paragraphs of undisputed facts submitted to the district court for consideration on summary judgment, Ms. Litzinger contested only one and then only in part. And that information was regarding the degree of her personal use while she was on probation. Aside from this, no one disputes that her job was demanding or stressful. No one disputes that she had certain skills that were valuable for her job, or that at times her job performance was better than at others. But no one also disputes, in fact, Ms. Litzinger concedes that she had a long and well-documented history performance issues dating back for four years. No one disputes that one of Ms. Litzinger's persistent problems was being behind in work. No one disputes that one of her performance problems were made worse by the fact that she sometimes slept on the job or particularly towards the end of her tenure at the coroner's office would spend by her own estimation between 60 and 90 minutes of her own time on the computer. That- By the way, counsel, does anyone dispute that she was caught up on her work? Well, she had to submit her final reports before they terminated her. That is the only evidence regarding the status of her work product is that she finished two outstanding reports, I believe it was, on that Sunday and then they terminated her. So she was caught up on her work? On just the report, so far as we know. There's no evidence as to the scope of any other outstanding projects that may or may not have been open. But as to her open reports, she was caught up. Her use of personal internet was compounded by the fact that she would use, record that time as part of her work time for her employer. And on at least one admitted occasion, build overtime for the use of the internet for personal searches. She also concedes that all of this occurred before she took 13 days of FMLA leave. That is the only protected activity at issue in this case, both under her FMLA retaliation claim and her ADA retaliation claim. She further conceded upon her return from taking leave that the coroner, quote, had every reason to terminate her for her recent performance issues. But Ms. Lissinger argues now that the coroner, because she put her on a six month probation period instead, that that created pretext. And the stated reasons for probation were, and there is very little dispute about this given the recording of the conversation, that she must stop being behind in her work, limit or exclude personal internet usage consistent with the preexisting written policy, cease from fraudulent time card entries, and ask if she had any questions about any of these restrictions. During her probation, the coroner required strict compliance with that policy and based on a review of her internet usage conducted approximately two weeks after the probation began, the coroner discovered several, between five and six, depending on how you split the list out, internet usage activities that seemed to indicate personal usage. At that point in time, the decision to terminate Ms. Lissinger was made. Why didn't they ask her if she had an explanation for that usage? Under the record, we don't know. The short issue is because she's- The record apparently, the record apparently reflects that they didn't ask. Is that correct? That is correct. There's no evidence that they asked and there's no evidence that she offered an explanation, nor is there any evidence to suggest that she had an entitlement to a hearing to determine the validity of the reason. The coroner made the decision based on the information in her possession at the time, including URL sites that seemed to indicate visits to Facebook and that from the URL descriptors indicated search histories that did not comport with any open matters she had that could be reasonably determined to be related to her professional work. Oh, so they could tell, not just that she used Facebook, but what she did when she was on Facebook? Facebook is a harder one. There are certain cases where, for example, if you search the news organization, the name of the article would reveal the content of the article, or when you were searching for property listings, it might show the address of the property listing. In supplemental evidence, where Ms. Leisinger submitted an affidavit contradicting one of these issues about the use of the website, she avers that she's attempted to go to the Facebook URL and couldn't access it. And therefore she concludes that it can't be a personal site, whether hers or someone else's, because it was no longer operative. And she secondarily infers that therefore it must have been for business purposes. But in truth, in fact, the evidence on that point is not undisputed. What is undisputed is that she visited Facebook and she had a history of visiting Facebook for personal uses. And the coroner could reasonably believe that when the Facebook URL shows up, among other things, given the history here, that this was a return to prior bad behavior that had led to very serious problems, both on performance and on billing issues. So at that point in time, the treasurer's decision was warranted based on the facts in front of her, and they had nothing to do with Ms. Leisinger's recent decision to take FFLA leave. And it's at this point- I'm sorry, you said billing issues? For plan keeping, where she would charge, she would record for 40 hour work week to the county the time served, and then sometimes use it for overtime. No one, okay, okay. So granted the information in the coroner's possession, she was more than entitled to terminate Ms. Leisinger based on the information in front of her, and none of the evidence or arguments about the evidence that Ms. Leisinger presented below raised a reasonable inference that the reasons for her termination were in fact pretextual retaliation for taking FMLA leave. And that is the key issue here. Ms. Leisinger seems to operate under two reinforcing theories, neither of which are supported by the law. The first is that when she took the FMLA leave, that that somehow obviated or displaced all of the past performance, and that therefore any past performance issues could not be considered in a going forward disciplinary action. But in fact, it is those past issues that are well-documented and conceitedly happened that set up the need for probation and the seriousness of what may otherwise be only a handful of small internet visits according to her characterization of them. Even assuming her characterization, however, the performance in the history reveals the significance of the violation and that the coroner had a legitimate business concern that she was returning to a recent history of significant personal internet usage. The second element that seems to be layering in behind Ms. Leisinger's theory is the idea that if somehow a probationary period is set up to allow an employee to fail, that that is pretext connected to a protected event. And again, there's no case law so holding. The pretext theory of establishing causation is just that. It is meant to find causal links between the protected class when there is no direct evidence of an adverse action or discriminatory intent. In cases like Fassbender, inconsistencies or presumed trivialities are meaningful only in the presence of large specific agitated statements that there the defendant made regarding the status of pregnant women and the ability to cover for them while they were on leave. And the court there found that the nature of the statements, the number of them, the severity of them, they're targeting towards the risk posed to the enterprise for her leave were sufficient to cast into doubt a multitude of additional variables that are not present in this case. Here, the only purported evidence of a negative view towards FMLA leave is one email between the coroner and a medical services provider, which under Ms. Leitzinger's theory doesn't quite say what it is characterized to say. In other words, what Ms. Leitzinger views that statement as being from the coroner is that there was a risk that the employee would abuse FMLA leave, but that's not what the email says. What the email says is that there was a risk that this employee would abuse this. And it is unclear from the email, or at least not clear as an evidence of a positive negative intent, if I can state it in opposing ways, is that what she's actually talking about is the FMLA leave rather than using the free psychological services as the means by which to make the FMLA request. And it is this reading that the district court found more reasonable given that she goes on to say that she encourages the continued use of the psychological services and that she expects that she will request FMLA leave through her private medical provider and that going forward, the private medical provider should refer out those works FMLA recommendations to private medical providers. There is no statement on the face of that email that express any hostility from the coroner to medical leave, FMLA leave. The only concern the coroner is expressing is that this particular employee would use this freely provided service to accomplish a leave end that would be better suited for private medical providers. And that I submit is a world's difference between the evidence of negative intent at issue in Fassbender. And because of not only that difference, but the fact that here, unlike in Fassbender, there was a long documented history of performance issues for which she was put on leave rather than being immediately terminated, which was a lesser action and then admittedly violated the leave even under her own narrower view of events that is more than sufficient to uphold the district court's ruling below that there are no reasonable jury based on the breadth documentation and admitted nature of the facts could find that her termination was a pretext for discrimination for deciding to take FMLA leave. Council, would you agree that the record at this point shows that taking the facts in light most favorable to the non moving party, that there was only one violation of the probation that is only one personal use violation? No, your honor. You have any word there that? What the undisputed facts show is that there was, she admits that one of the listed ones was a personal violation. She acknowledges, although it wasn't on the list, that she in fact violated it a second time, but they didn't catch it on the list, which was the displaying of the photography website. And her denial of the Facebook one is built only on an affidavit, which arguably is a self-serving affidavit not entitled to the construal that your honor has just mentioned. And on top of it is based on speculation because she doesn't know what the Facebook website was. She now posits that it must not have been personal, but that is not an undisputed fact. So there are at least two violations of what one, at least one, the coroner knew, and the evidence as presented, the admissible evidence, would suggest another one, at least a Facebook website. All right, so as to what the coroner knew when the decision was made, how many violations did the coroner think had occurred at that point in time? I believe it was six, your honor. On five different dates. All right, and then it turned out it wasn't really six. There is a dispute as to whether three of them to five of them on that list were personal. All right, thank you. Unless the court has further questions, we think the district court's assessment of the undisputed evidence before it warrants the ruling here that no reasonable jury could find an inference of pretext from the evidence before it, and we urge the court to affirm. Thank you, counsel. Mr. Lick, do you have some rebuttal? Thank you. First of all, the evidence regarding the Facebook sites, apparently all of the investigators went to Facebook sites for a variety of ways to try to figure out who was related to whom and that type of thing. So going to Facebook was not for personal use. They did it all the time for the professional use. And then looking at the coroner's email, you judges see evidence like this pop up every now and then. I don't think I've ever seen an email that was quite so damning as this one. Now, it's not direct evidence of discrimination, but it is direct evidence of the coroner's state of mind. And I was puzzled that the district court judge construed it in a way that was far more favorable to the moving party rather than to plaintiff. And I would suggest that the court focus on that email and the implication of the email and the fact that the email sets up both the prima facie case, which was not an issue, but it sets up pretext also. It says why she did what she did after she was put on probation. She needed a paper trail, she made it and she used it. And with that, unless there's other questions, I think the court understands our position. And counsel, I think the arguments were helpful to us. We appreciate your participation. You are excused and the case will be submitted.